FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV -2  PM 3: 57

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**WANDA SANDERS**                                     CIVIL ACTION

**VERSUS**                                            NO. 05-2633

**AT&T, et al.**                                      SECTION: I/2

### ORDER AND REASONS

Plaintiff, Wanda Sanders, brought this action against her former employer, defendant AT&T, and the disability benefit plan's claims administrator, defendant Metropolitan Life Insurance Company ("MetLife"), alleging claims for, *inter alia*, wrongful termination pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1001 *et seq.*[1] This matter is before the Court pursuant to a motion to dismiss or, in the alternative, a motion for summary judgment filed on behalf of AT&T.[2] For the following reasons, AT&T's motion is **DENIED**.

### *Factual and Procedural Background*

Sanders filed this action disputing her employer's decision not to reinstate her to the position of customer sales and service specialist following 52 weeks of short term disability leave. Sanders was employed by AT&T from September 30, 1980,

---

[1] Rec. Doc. No. 1, ex. B, petition of Wanda Sanders, ¶¶ I-V.

[2] Rec. Doc. No. 11, defendant's motion to dismiss.

through May 16, 2003, when she became disabled.[3]  At that time, Sanders was eligible to receive benefits under AT&T's short term disability plan which she received under the plan until May 21, 2004, when her 52 weeks of short term disability benefits were scheduled to end.[4]

On January 21, 2004, approximately nine months after she began receiving short term disability benefits, MetLife notified Sanders in writing that her benefits were scheduled to end and that if her disability continued to prevent her from returning to work at that time, she could apply for benefits under AT&T's long term disability plan.[5]  On March 26, 2004, during a telephone interview, Sanders indicated that her doctor advised that she was not able to return to work, but plaintiff also stated that she may have to return to work.[6]  Subsequently, on April 14, 2004, MetLife had an independent medical evaluation of Sanders performed, the conclusion of which was that Sanders continued to show signs of significant psychiatric impairments which would

---

[3] Rec. Doc. No. 11, p. 2.

[4] See Rec. Doc. No. 11, ex. B, AT&T sickness and accident disability benefit plan for occupational employees.  Under the short term disability plan, AT&T is the plan administrator and MetLife is the claims administrator.  See id.
  According to her treating psychologist, plaintiff was diagnosed with "major depression with passive suicidal preoccupation" and "generalized anxiety disorder."  Id., ex. A, psychological evaluation dated May 16, 2003.

[5] Rec. Doc. No. 11, ex. D, MetLife letter to Sanders.  On March 22, 2004, MetLife sent additional information to Sanders, reiterating the anticipated termination of her short term disability benefits.  Id., ex. E.

[6] Rec. Doc. No. 11, exs. F & G, MetLife diary review report for March 26, 2004, and July 25, 2003 letter from Dr. Boutte, respectively.

"preclude any gainful employment at this point in time."[7]  On May 6, 2004, MetLife contacted Sanders by telephone to advise her that it was not permitting her to return to work because she had not been released by her treating physicians, the medical records in her file indicated that she was unable to perform her job duties, and she was certified on disability.[8]  On May 12, 2004, Sanders later indicated that she wanted to return to work "to take a package as her job [wa]s closing."[9]

Following the May 6th phone call, MetLife received documentation from Sanders's treating psychologist and psychiatrist which cleared her to return to work on May 17, 2004.[10]  MetLife ordered another independent medical examination to be conducted on May 17, 2004, and MetLife's review concluded that the documentation did "not support significant recovery to allow a successful return to work" and that it "appear[ed] that this reversal of return to work planning is solely due to the Claimant's wish to avoid losing her employer benefits."[11]  Based on the independent medical examination, MetLife advised Sanders by telephone that her medical records did not support a return to

---

[7] Rec. Doc. No. 11, ex. H, independent physician consultant review for MetLife disability.

[8] Rec. Doc. No. 11, ex. J, MetLife diary review report for May 6, 2004.

[9] Rec. Doc. No. 11, ex. J, MetLife diary review report for May 12, 2004.

[10] Rec. Doc. No. 11, ex. K.

[11] Rec. Doc. No. 11, ex. L.

work.[12]

According to AT&T, MetLife explained that Sanders could appeal the decision to not allow her to return to work if she believed that she was capable of performing her job duties.[13] Sanders did not appeal MetLife's decision, and instead she filed a claim for long term disability benefits.[14] Sanders was approved for benefits under the AT&T long term disability plan and began receiving benefits on May 22, 2004. However, on February 1, 2005, MetLife determined that Sanders was no longer qualified to receive long term disability benefits because she had failed to remain under the care of a physician and failed to follow a recommended course of treatment.[15] Sanders appealed that decision, and MetLife, notwithstanding its prior position, upheld its original decision to terminate her long term disability benefits based in part upon plaintiff's doctors' previous statements that she was able to return to work on May

---

[12] AT&T contends that Sanders explained on May 20, 2004, that she was "very upset since [she] want[ed] to take early retirement" as AT&T's office was scheduled to close on June 25, 2004. Rec. Doc. No. 11, ex. M, MetLife diary review report for May 20, 2004. Sanders avers that she never told anyone at MetLife that she wanted to return to work "to take a package as her job was closing." Rec. Doc. No. 14, ex. A, ¶ 10, plaintiff's affidavit.

[13] Rec. Doc. No. 11, memorandum in support of defendant's motion, p. 4. See Rec. Doc. No. 11, ex. M, MetLife diary review report for May 27, 2004.

[14] Plaintiff's affidavit states that she applied for long term disability benefits at the recommendation of the CWA union in light of MetLife's refusal to allow her to return to work. Rec. Doc. No. 14, exhibit A, ¶ 16.

[15] Rec. Doc. No. 11, ex. Q, MetLife letter to Sanders informing her of adverse benefit determination.

17, 2004.[16]  Ultimately, Sanders was terminated because she was unable to return to work.[17]

On May 20, 2005, plaintiff filed a verified petition pro se in Orleans Parish Civil District Court against AT&T and MetLife. In her petition, plaintiff does not contest the adverse benefits determination made with respect to her long term disability benefits, but rather plaintiff complains that she was "wrongfully terminated from her employment."[18]  Defendants jointly removed the action to this court.  Shortly thereafter, AT&T filed this motion to dismiss or, in the alternative, motion for summary judgment, contending that:  1) plaintiff failed to exhaust her administrative remedies as provided by AT&T's short term disability plan; and 2) plaintiff has not stated a claim for wrongful discharge.

### Law and Analysis

A district court may not dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99,

---

[16] Rec. Doc. No. 11, ex. S, p. 2, MetLife's letter to Sanders.

[17] *See* Rec. Doc. No. 1, ex. B.  Neither plaintiff's opposition nor AT&T's memorandum in support of its motion and accompanying exhibits identify the exact date AT&T terminated Sanders.

[18] Rec. Doc. No. 1, ex. B, ¶ V.

102, 2 L. Ed. 2d 80 (1957); *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995). This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts in the complaint as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey,* 197 F.3d at 774; *Lowry v. Texas A&M University System,* 117 F.3d 242, 247 (5th Cir. 1997). "However, '[i]n order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . . .'" *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992) (quoting *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir. 1989))(alteration in original). "'[C]onclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss." *Id.* (quoting *Associated Builders, Inc. v Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir. 1994)). Moreover, "'legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Blackburn,* 42 F.3d at 931 (quoting *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993)). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference

fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)(internal quotation and citation omitted).

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank,* 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Webb v. Cardiothoracic Surgery Assocs. of N. Tex.,* 139 F.3d 532, 536 (5th Cir. 1998).

AT&T contends that Sanders failed to exhaust her administrative remedies under the short term disability plan regarding the decision not to allow her to return to work.

Generally, a claimant seeking remedies from an ERISA plan must first exhaust administrative remedies before bringing a claim. *Bourgeouis v. Pension Plan for Employees of Santa Fe Intern. Corps.*, 215 F.3d 475, 479 (5th Cir. 2000). However, "ERISA itself is silent on the question of exhaustion of administrative remedies under ERISA § 510"[19] and the exhaustion requirement presupposes that "the grievance upon which the lawsuit is based arises from some action of a plan covered by ERISA, and that the plan is capable of providing the relief sought by the plaintiff." *Chailland v. Brown & Root*, Inc., 45 F.3d 947, 950 (5th Cir. 1995). In *Chailland*, the United States Court of Appeals for the Fifth Circuit held that the exhaustion doctrine was inapplicable in an action involving a § 510 claim against an employer because the grievance did not involve any action of a plan covered by ERISA and because the plan was not capable of providing a remedy. *Id.* at 950-51. The *Chailland* court further noted that remitting the plaintiff's claim to the plan would be an exercise in "utter futility." *Id.* at 951.

Plaintiff's claim against AT&T does not involve a denial of benefits which would trigger the exhaustion of administrative remedies set forth in the benefit plan, itself, nor does the plan

---

[19] ERISA § 510, codified at 29 U.S.C. § 1140, provides in part that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ."

provide the relief sought by plaintiff.[20]  Rather, plaintiff's claim is pleaded as a § 510 wrongful termination claim.[21]  For the same reasons identified in *Chailland*, plaintiff's § 510 claim against AT&T is not subject to an exhaustion requirement and, therefore, AT&T is not entitled to a dismissal for plaintiff's failure to exhaust.

Next, AT&T contends that plaintiff fails to state a claim for wrongful termination.  The Fifth Circuit has set forth a three part test in order to establish a prima facie case of discrimination under ERISA.  In order "[t]o sustain a valid § 510 claim, an employee must show: (1) prohibited (adverse) employer action (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled." *Bodine v. Employers Casualty Co.*, 352 F.3d 245, 250 (5th Cir. 2003); *see Matassarin v. Lynch*, 174 F.3d 549 (5th Cir. 1999) (noting that a "violation of § 510 requires specific intent to discriminate"); *Holtzclaw v. DSC Commc'ns. Corp.*, 255 F.3d 254, (5th Cir. 2001) (plaintiff must establish that his employer fired him . . . to prevent attainment of benefits to which he would

---

[20] *See* Rec. Doc. No. 11, exhibit B, pp. 12-13, claim and appeal procedures of AT&T sickness and disability benefit plan.  During a telephone status conference, counsel for AT&T and MetLife conceded that the disability plan at issue does not provide for reinstatement of the employee.

[21] Plaintiff's petition does not appear to make a claim based on a wrongful determination of benefits.  Moreover, plaintiff's counsel represented that plaintiff is not making a claim for a denial of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), but rather that her claim is one pursuant to section 510.

have become entitled under an employee benefit plan). In *Holtzclaw v. DSC Communications*, the Fifth Circuit required an additional element in order to establish a prima facie § 510 ERISA claim: plaintiff's qualification for the position. 255 F.3d at 261.

Plaintiff's pro se petition alleges that after twenty four years of service with AT&T and after attempting to return to work from disability leave, MetLife did not permit her to return to work. Plaintiff further alleges that she was then unlawfully terminated by AT&T and denied any severance pay, retirement benefits, and insurance coverage. Plaintiff's petition contains allegations which appear to satisfy the basic requirements of a prima facie case. Based on AT&T's arguments and after reviewing the law, the Court cannot find, at this early stage in the proceedings, that plaintiff has failed to state a claim for wrongful termination.[22]

Accordingly, for the above and foregoing reasons, **IT IS ORDERED** that the motion to dismiss or, alternatively, for summary judgment of defendant, AT&T, is **DENIED**.

Houston, Texas, October __31__, 2005.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[22] While AT&T alternatively captions its motion as one for summary judgment, AT&T does not identify a lack of a genuine issue as to any material fact. Therefore, the Court cannot find that AT&T is entitled to judgment as a matter of law.