UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WANDA SANDERS                                     CIVIL ACTION

VERSUS                                            No. 05-2633

AT&T, *et al.*                                    SECTION: I

ORDER AND REASONS

Before the Court are two separate motions for summary
judgment filed on behalf of defendants, AT&T and Metropolitan
Life Insurance Company ("MetLife").[1]  For the following reasons,
defendants' motions are **GRANTED.**

*Background*

Plaintiff, Wanda Sanders, was an active employee of AT&T
from September 30, 1980, through May 16, 2003, when she took
medical leave under AT&T's short-term disability benefits plan.[2]

_____

[1]Rec. Doc. No. 46, MetLife's motion for summary judgment; Rec. Doc. No. 47,
AT&T's motion for summary judgment.

[2]Rec. Doc. No. 47, AT&T's statement of uncontested facts ("AT&T's SOF"),
¶¶ 1-2.
    Pursuant to Local Rule 56.2, "[e]ach copy of the papers opposing a motion
for summary judgment shall include a separate, short and concise statement of the
material facts as to which there exists a genuine issue to be tried."  That rule
further provides that "[a]ll material facts set forth . . . by the moving party
will be deemed admitted, for purposes of the motion, unless controverted as
required by this rule."  LR56.2.  In this case, plaintiff has not filed a
statement of contested material facts as required by Local Rule 56.2.  Rather,
plaintiff filed a listing of issues in the case but has not controverted any
facts contained in defendants' statements of uncontested facts.  Therefore,
plaintiff is deemed to have admitted the facts set forth in defendants'
statements. *See Malmay v. Sherman*, No. Civ.A. 02-2294, 2003 WL 22077786, at *2
n. 14 (E.D. La. Sept. 8, 2003); *Harris v. Advance Transformer Co.*, No. CIV. A.
98-2312, 2000 WL 726889, at *2 (E.D. La. June 6, 2000).

At that time, Sanders was unable to perform her job functions due to a mental disability.[3]  As an employee of AT&T, Sanders was eligible to receive benefits under AT&T's short-term disability benefits plan, *i.e.*, the AT&T Sickness and Accident Disability Benefit Plan for Occupational Employees.[4]  Pursuant to the short-term disability plan, AT&T was the plan administrator and MetLife was the claims administrator.[5]

On January 21, 2004, approximately nine months after Sanders began receiving short-term disability benefits, MetLife notified Sanders in writing that her fifty-two weeks of short term disability benefits were scheduled to end on May 21, 2004.[6]  She was further informed that if her disability continued to prevent her from returning to work, she could apply for benefits under the AT&T Long Term Disability Plan for Occupational Employees ("LTD plan").[7]  On March 22, 2004, MetLife sent a second correspondence to Sanders again explaining that her short term disability benefits were scheduled to end on May 21, 2004, and

---

[3]Rec. Doc. No. 47, AT&T's SOF ¶ 2.  Her psychologist, Dr. John Boutte, diagnosed her with "major depression with passive suicidal preoccupation" and "generalized anxiety disorder." Rec. Doc. No. 47-3, ex. B, Boutte's deposition, p. 6.

[4]Rec. Doc. No. 47-4, ex. D, summary of plan description.

[5]*Id.*

[6]Rec. Doc. No. 47, AT&T's SOF ¶ 5 (citing Rec. Doc. No. 47-5, ex. F).

[7]*Id.*  The letter specifically stated that "[i]f you are eligible for LTD benefits, there is no guarantee of reemployment with AT&T." *Id.*  Sanders recalls receiving this letter and claims she understood her options.  Rec. Doc. No. 47-3, ex. A, plaintiff's deposition, p. 8.

that she could apply for long term disability benefits.[8]  The
letter stated that Sanders would no longer be on AT&T's active
payroll after May 21, 2004.[9]

On March 26, 2004, MetLife conducted a telephone interview
with Sanders in which she was questioned about her plans to
return to work.[10]  Sanders explained that she felt she had to
return because her short-term benefits were about to end and that
if she did not return she may lose her job.  During the call,
Sanders directly informed MetLife that Dr. Boutte told her she
was not ready to return to work.[11]

On April 14, 2004, Dr. Lee Becker, on behalf of MetLife,
performed an independent medical evaluation of Sanders' case
which included a teleconference with Dr. Boutte and the MetLife
case management team.[12]  Dr. Becker concluded that Sanders
continued to show signs of significant psychiatric impairments
and that she was not capable of returning to work.[13]  On May 6,
2004, MetLife contacted Sanders by telephone, and advised her

---

[8]Rec. Doc. No. 47-5, ex. G, p. 14.

[9]*Id.*  Sanders also recalls receiving this correspondence, and acknowledges
that it was the second time she received information concerning the end of her
short term disability leave.  Rec. Doc. No. 47-4, ex. A, plaintiff's deposition,
p. 8.

[10]Administrative Rec. at M-0228-29.

[11]*Id.*

[12]Administrative Rec. at M—0470-73.   Dr. Becker was a board certified
psychiatrist.   *Id.* at M—0473.

[13]*Id.*

that she would not be permitted to return to work until she was released by MetLife.[14]  MetLife explained that no physician had released her to work and that her medical records showed impairments that would prevent her from being able to perform her job duties.[15]  Sanders was told that MetLife could not release her to return to work and that AT&T was instructed not to allow her to return.[16]  Sanders indicated that she would have her therapist send a release to return to work, but MetLife explained that her medical records would need to support the fact that she recovered from her disability and that she could perform her job.[17]

Sanders subsequently presented MetLife with two doctors' notes indicating that she could return to work.[18]  The notes were provided by Dr. Boutte, the clinical psychologist who treated Sanders throughout her short term disability leave, and Dr. Colomb, Sanders' treating psychiatrist.  Neither note stated that Sanders' condition had improved or that she was no longer disabled.

In May, 2004, Sanders attempted to return to work.  However,

---

[14]Administrative Record at M-0233.

[15]Id.

[16]Id.

[17]Id.

[18]Rec. Doc. No. 47-4, ex. A, plaintiff's deposition, p. 15; Rec. Doc. No. 47-5, pp. 27-28.  Administrative Rec. at M-0458-60.

AT&T Human Resources Manager, Karmen Arlie, informed Sanders that MetLife had not cleared her return and that, as previously told, she would not be permitted to return to work.[19]   Once Sanders received the maximum fifty-two weeks of short term disability benefits and remained disabled under the terms of the AT&T Sickness and Accident Disability Benefits Plan, she was no longer considered an active employee of AT&T.   Consequently, AT&T removed Sanders from the payroll and her employment with AT&T was terminated.[20]

Subsequently, MetLife explained to Sanders that she could appeal the decision not to allow her to return to work if she felt she was capable of performing her job duties.[21]   Sanders was provided with the address and procedures for filing an appeal but instead, on May 21, 2004, Sanders filed a claim for long term disability benefits.[22]

Sanders received long term disability benefits beginning on May 22, 2004, through February 1, 2005.   Within two weeks of applying for and first receiving long term disability benefits

---

[19]Rec. Doc. No. 47, AT&T's SOF ¶¶ 31-32.

[20]Rec. Doc. No. 47-6, ex. K, declaration of Karmen Arlie, pp. 29-30.   This is the same procedure utilized by AT&T with respect to all employees who exhaust fifty-two weeks of short term disability benefits.   All employees who apply for and receive long term disability benefits must re-apply for an open position should they return to work at AT&T.   AT&T's SOF ¶¶ 37-40.

[21]Administrative Rec. at M-0237-38.

[22]*Id.*; Rec. Doc. No. 47-4, ex. A, plaintiff's deposition, p. 155-56; Rec. Doc. No. 47-5, ex. M, pp. 54-57 (Bates stamped M-0438-41).

5

from AT&T, Sanders also applied for and began receiving Social Security Disability Benefits.[23]  In order to obtain social security benefits, Sanders swore under oath that she was disabled and incapable of performing her job duties.[24]

In early 2005, MetLife reviewed Sanders' file and determined that she was no longer qualified to receive long term disability benefits.[25]  On January 11, 2005, MetLife advised Sanders of the decision to terminate her long term disability benefits and of her appeal rights.[26]  Sanders unsuccessfully appealed the termination and exhausted her administrative remedies under AT&T's long term disability benefits plan.[27]

On May 20, 2005, Sanders filed a petition for damages *pro se* in the Civil District Court for the Parish of Orleans against AT&T and MetLife under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and against AT&T for wrongful termination pursuant to § 510 of ERISA.  Defendants removed the case to this court and their motions for summary judgment followed.

---

[23]Rec. Doc. No. 47-3, ex. A, pp. 157-64.

[24]Rec. Doc. No. 47-5, ex. M, pp. 54-57; Rec. Doc. No. 47-5, ex. N, p. 58.

[25]Administrative Rec. at M-0319-21.

[26]*Id.*

[27]*See* Rec. Doc. No. 11, ex. R.

### *Law and Analysis*

**I. Summary Judgment Standard**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, and determine whether a reasonable factfinder might find in favor of the nonmovant based on those facts. *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The nonmovant's burden is not satisfied by creating merely some metaphysical doubt as to the material facts, by conclusory allegations, unsubstantiated assertions or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th

Cir. 1994) (citations omitted).  The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).  The Court will not, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990)).

The materiality of facts is determined by "the substantive law's identification of which facts are critical and which facts are irrelevant." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2509. Therefore, a fact is material if it "might affect the outcome of the suit under the governing law." *Id*.  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356 (internal quotation omitted).

The plain language of Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon

8

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552-53; *Munoz v. Orr*, 200 F.3d 291, 307 (5th Cir. 2000) ("A complete failure of proof as to one element requires summary judgment against the entirety of the claim.") (citation omitted).

## II. AT&T's Motion for Summary Judgment

AT&T argues that Sanders has failed to establish a *prima facie* violation of section 510 of ERISA.[28]  AT&T contends that upon the culmination of her short term disability benefits, Sanders was not qualified to return to work because there was no medical documentation indicating that she could perform her job. AT&T further argues that it did not have the requisite intent to discriminate against Sanders because it relied fully on MetLife's

---

[28] 29 U.S.C. § 1140, commonly referred to as section 510 of ERISA, states in pertinent part:
> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled.

29 U.S.C. § 1140 (1999).

9

determination that Sanders was unqualified to work.  Finally,
AT&T claims that Sanders is judicially and/or equitably estopped
from arguing that she was not disabled when she attempted to
return to work.

In her opposition to AT&T's motion for summary judgment,
Sanders claims she has set forth a *prima facie* case of
discrimination, arguing that the medical evidence does not
clearly indicate that she was not qualified to return to work and
that AT&T's specific intent to discriminate can be inferred from
the totality of the circumstances.

Section 510 of ERISA, 29 U.S.C. § 1140, makes it unlawful to
discriminate against an ERISA beneficiary for the purpose of
interfering with the attainment of any right to which such
participant may become entitled under the plan.  *See Matassarin
v. Lynch*, 174 F.3d 549, 569 (5th Cir. 1999).  The Fifth Circuit
has set forth a three part test to establish a *prima facie* case
of discrimination pursuant to § 510 of ERISA.  *Bodine v.
Employers Cas. Co.*, 352 F.3d 245, 250 (5th Cir. 2003).  In order
"[t]o sustain a valid § 510 claim, an employee must show: (1)
prohibited (adverse) employer action (2) taken for the purpose of
interfering with the attainment of (3) any right to which the
employee is entitled." *Bodine*, 352 F.3d at 250.  The Fifth
Circuit also requires an additional element to establish a *prima
facie* case under § 510:  plaintiff must be qualified for the

position.  *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d. 254, 261 (5th Cir. 2001).

If a plaintiff establishes a *prima facie* violation of § 510, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for its actions, and then the burden shifts to back to the plaintiff to prove such reason is a pretext. *Stafford v. True Temper Sports*, 123 F.3d 291, 296 (5th Cir. 1997).

AT&T first argues that Sanders was not qualified to return to work because there is no medical documentation to support either the medical releases by Sanders' physicians or her belief that she was capable of performing her job.  Sanders contends that there is a genuine issue of material fact as to whether she was qualified to perform her former job because she was released by her psychiatrist and her psychologist and because she wanted to return to work.[29]

Based on MetLife's refusal to release Sanders to work and its reasons therefor, the Court finds that Sanders has failed to created a genuine issue with respect to her qualification to perform her job.  *See Yurevich v. Sikorsky Aircraft Div.*, 51 F. Supp. 2d 144, 150 (D. Conn. 1999)(noting that "courts have recognized in the disability discrimination context, an employee is not 'otherwise qualified' for a job if he cannot attend

---

[29]Rec. Doc. No. 46, p. 7.

work"). While Sanders purportedly desired to return and received letters from her doctors stating that she could return, MetLife had not released her to return. Pursuant to the policy, Sanders could not attend work and, therefore, she was not qualified for her position.

AT&T also argues that Sanders has not established that its decision not to allow her to return to work was taken for the purpose of interfering with a right to which she was entitled. In order to ultimately prevail under § 510, an employee must show that the employer had the specific intent to discriminate. *Matassarin*, 174 F.3d at 569; *Hines v. Mass. Mut. Life Ins. Co.*, 43 F.3d 207, 209 (5th Cir. 1995) ("an essential element of a Section 510 claim is proof of defendant's specific discriminatory intent"); *see Clark v. Resistoflex Co.*, 854 F.2d 762, 770 (5th Cir. 1988). While Sanders argues that AT&T purposefully terminated her employment in order to prevent payment of certain additional benefits, Sanders has failed to identify any direct or circumstantial evidence which would support a finding that AT&T's decision was related in any way to preventing her future attainment of benefits.

Even assuming that a *prima facie* case has been established, AT&T has offered a non-discriminatory reason which plaintiff has not rebutted. Sanders argues that a genuine issue of material fact exists as to whether AT&T discriminated against her based on

12

the totality of the circumstances and, specifically, the fact that she would have qualified for severance pay if she had been permitted to return to work.[30]  However, Sanders' mere allegations that AT&T had discriminatory intent does not defeat summary judgment.

Sanders has failed to present any evidence suggesting that AT&T's reliance on MetLife's determination that she was disabled, *i.e.* its non-discriminatory reason for terminating her employment, was pretextual.  AT&T indicates that it followed the same procedures used for all employees who exhaust the fifty-two weeks of short term disability benefits.[31]  Moreover, the manager who refused to allow Sanders to return to work testified that she relied solely upon MetLife's determination that Sanders was still disabled and unable to return to work.[32]  Because AT&T relied completely on MetLife's determination and plaintiff has failed to present sufficient evidence that AT&T's reliance on MetLife's determination was pretextual, the Court finds that AT&T is entitled to judgment as a matter of law.[33]

**III. MetLife's Motion for Summary Judgment**

---

[30]Rec. Doc. No. 49, Sanders' memorandum in opposition to AT&T's motion for summary judgment, pp. 7-9.

[31]Rec. Doc. No. 47-5 at pp. 29-30, ex. K, declaration of Karmen Arlie.

[32] *Id.*

[33]Because the Court has determined that Sanders' § 510 claim fails as a matter of law, the Court does not address AT&T's alternative arguments regarding equitable and judicial estoppel.

MetLife contends that ERISA preempts all of Sanders' claims. MetLife also argues that as the claims administrator and fiduciary, it should be dismissed from this lawsuit because it is not liable for benefits claimed under AT&T's self-funded plan. Finally, MetLife claims that it is entitled to summary judgment because it did not abuse its discretion in making determinations about Sanders' ability to work.[34]

## A. Sanders' Intentional Infliction of Emotional Distress Claim

Section 514(a) of ERISA contains an express preemption provision which establishes that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. 1144(a). In *Pilot Life Ins. Co. v. Dedeaux*, the Supreme Court held that "the express pre-emption provisions of ERISA are deliberately expansive" and preempt all state laws that "relate to" ERISA plans. 481 U.S. 41, 47-48, 107 S. Ct. 1549, 1551-53, 95 L. Ed. 2d 39 (1987). The Court concluded that the language "relate to" was to be construed in its broadest sense and that preemption is mandated where the state claim has a "connection with or reference to" an employee benefit plan. 481 U.S. at 47-48, 107 S. Ct. at 1553 (quoting *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 739, 105 S. Ct.

---

[34]Sanders received fifty-two weeks of paid sickness disability and, therefore, asserts no claim against MetLife with respect to her short-term benefits. Rec. Doc. No. 47, SOF ¶ 4.

2380, 2389, 85 L. Ed. 2d 728 (1985)).  A claim relates to the

plan and is preempted by ERISA when it could not be made if the

plan ceased to exist.  *Light v. Blue Cross and Blue Shield of

Ala., Inc.*, 790 F.2d 1247, 1249 (5th Cir. 1986) (finding state

law claims of intentional and negligent infliction of severe

emotional distress, among others, preempted by ERISA); *Loria v.

Children's Hosp.*, No. Civ.A. 02-3194, 2003 WL 22038424, at *10

(E.D. La. Aug. 28, 2003)(finding intentional infliction of

emotional distress claim preempted); *Franks v. Prudential Health

Care Plan, Inc.*, 164 F. Supp. 2d 865, 874 (W.D. Tex. 2001).

     Sanders contends that her intentional infliction of

emotional distress claim does not relate to the contested ERISA

benefits.  However, her claim of emotional distress would not

exist in the absence of AT&T's employee benefit plan, i.e.,

MetLife would not have engaged in the conduct which allegedly

caused Sanders' distress were MetLife not the claims

administrator for the plan.  As such, Sanders' claim for

intentional infliction of emotional distress "relates to" the

employee benefit plan governed by ERISA and, therefore, it is

completely preempted by ERISA.

**B.  Long Term Disability Benefits**

     When the language of a benefit plan grants discretionary

authority to determine eligibility for benefits or to construe

the terms of the plan, a court will reverse the administrator's

decision only for abuse of discretion.  *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999); *see Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991) (holding that "for factual determinations under ERISA plans, the abuse of discretion standard of review is the appropriate standard; that is, federal courts owe due deference to an administrator's factual conclusions that reflect a reasonable and impartial judgment").  The parties agree that the standard by which the decisions of MetLife, a fiduciary with discretionary authority, must be reviewed is the abuse of discretion standard.[35]

The Fifth Circuit recently explained the abuse of discretion burden of proof:

> The law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits, *not* that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability.  Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  We are aware of no law that requires a district court to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance.  If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail.

*Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)(citation footnotes omitted).

---

[35]Rec. Doc. No. 46, p. 21; Rec. Doc. No. 48-1, p. 7.

A fiduciary's decision is arbitrary and capricious if the "record lacks substantial evidence to support the [] benefit determination." *Mouton v. Fresenius Med. Care of N. Am.*, No. 03-30361, 2003 WL 22287522, at *1 (5th Cir. Oct. 6, 2003).  The court determines whether a fiduciary abused its discretion when making a factual determination by examining the record before the it at the time the claim was denied. *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999).

Under the terms of the plan, Sanders was eligible to receive long-term disability benefits if she was "disabled under the provisions of the LTD plan."[36]  Sanders argues that MetLife's decision to terminate her benefits was an abuse of discretion because MetLife did not have a mental health care provider examine Sanders.[37]  Sanders cites no caselaw to support this argument and such an argument was specifically rejected in *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594 (5th Cir. 1994).  While Sanders claims that a "full and fair review" of her claim required a physical examination, the Fifth Circuit has specifically found that a such an examination is not required.

---

[36]Administrative Rec. at M—0769.  The plan defined disabled as being "unable to do any job, for any employer, for which: [the employee was] qualified, or [the employee] may become reasonably qualified by training, education or experience, other than a job that pays less than 50% of your Eligible Base Pay prior to the commencement of LTD Plan benefits."  *Id.*
   The plan further provided that "[a]t all times during your disability, you must be under a physician's care and following the recommended course of treatment in order to receive LTD Plan benefits.  *Id.*

[37]Rec. Doc. No. 48-1, pp. 8-9.

*Id.* at 602.

In *Sweatman*, the plaintiff argued that MetLife made the wrong decision because it did not sufficiently weigh her doctors' opinions and relied too heavily on the results of its own investigation. *Id.* at 601. The court rejected this argument and held that review of the plaintiff's medical records, independent review and investigation, and reconsideration was sufficient to meet the "full and fair review" requirement. *Id.* at 601-02. Finally, Sweatman argued that the independent medical review had no evidentiary value because it merely "whitewashed" the decision already made by the plan administrator. *Id.* at 601 n.14. The court found that Sweatman's characterization of the review process did not change the fact that the report generated by the review contained "ample evidence supporting MetLife's determination." *Id.*

In this case, MetLife analyzed Sanders' medical files, obtained independent medical review, explained its "adverse benefit determination" to Sanders, provided her with directions to appeal the decision, reviewed the claim following an appeal, and obtained review from a different independent physician consultant than the physician consultant who initially reviewed the claim prior to the termination of benefits.[38]

---

[38]Administrative Rec. at M-0319-22, M-0256-59d, and M-0258-59. *See also* Rec. Doc. No. 46, p. 13; Rec. Doc. No. 51-4, p. 5.

18

Notwithstanding Sanders' allegation that the "handpicked" independent physician consultants did not give her claim a complete review, the medical reports and the independent medical reviews provide a sufficient basis to support the basis for MetLife's termination of Sanders' benefits.  Moreover, plaintiff has failed to reference any portion of the administrative record which would support a finding that MetLife's decision was arbitrary and capricious.

Additionally, decisions, such as MetLife's, to deny or terminate benefits based on an administrative review, rather than a physical examination, have been regularly upheld.  In *Vercher v. Alexander & Alexander Inc.*, the decision to terminate benefits by the defendant was based upon the administrative record and an independent medical review.  379 F.3d 222, 232 (5th Cir. 2004). The decision was upheld even though the independent physician reviewer "did not in fact examine Vercher in person; rather, he reviewed her records and the findings made by the other physicians and nurses who had examined her."  *Id.* at 231 n.12.

MetLife's decision to terminate Sanders' long term disability benefits was a reasonable determination based upon a review of the medical records available to MetLife at the time the benefits were denied.  MetLife looked to the medical records

from Sanders' own psychologist to substantiate its decision[39]

and, as stated, it received outside review from an independent

physician consultant, Dr. Becker.[40]  Dr. Becker concluded:

> The medical/psychiatric documentation currently
> avail[able] to review does not support such significant,
> global psychiatric impairments and obj[ective] findings
> to preclude any gainful employment at this time.  The
> mental health documentation provided for review shows
> some comments/discussion related to various medical
> complaints and marital stress, however, the mental status
> examinations consistently show a pattern of not
> documenting significant deficits in thought processing,
> memory or cognition that would preclude all occupational
> functioning.  There is no indication of psychotropic
> medication changes nor is there documentation of
> medications side effects impacting.  There is no
> indication of family involvement in treatment planning or
> of family therapy occurring.  There is no indication that
> more intensive mental health [followup], such as
> psychiatric day hospital programming or inpatient mental
> health treatment interventions have been considered.[41]

In addition to the information in Sanders' medical files,

MetLife based its termination, in part, on the failure of Sanders

to seek regular counseling.[42]  MetLife noted that Sanders only

saw her psychologist every four to five weeks and her

---

[39]MetLife sought records from Dr. Boutte and received faxed reports from him on November 12, 2004.  *See* Administrative Rec. at M-0330-42.  The records indicated that Sanders had "severe" marital stress which exacerbates her depression.  However, MetLife found that the records did not reflect any significant deficits in thought processing or cognition that would preclude occupational functioning.

[40]Rec. Doc. No. 46-2, p. 11.

[41]Administrative Rec. at M-0248-49.  MetLife then faxed its independent physician consultant's report to Sanders' psychologist, Dr. Boutte, for his comments but Dr. Boutte did not respond.

[42]Administrative Rec. at M—0251.

psychiatrist only every four months.[43]

In light of the evidence available at the time, this Court cannot conclude that MetLife's decision to terminate Sanders' LTD benefits and was an abuse of discretion.[44]   Accordingly,

**IT IS ORDERED** that the motion for summary judgment filed on behalf of defendant, AT&T, is **GRANTED.**

**IT IS FURTHER ORDERED** that the motion for summary judgment filed on behalf of defendant, Metropolitan Life Insurance Company, is **GRANTED.**

New Orleans, Louisiana, August ___9th___, 2006.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[43]*Id.*   Dr. Leonard Kessler, the independent board certified psychiatrist who reviewed Sanders' case on appeal, concluded that "the medical documentation, therefore, is insufficient to sustain a psychiatric diagnosis beyond 1/31/05." Administrative Rec. at M-0259c.

[44]Because the Court has determined that MetLife's LTD benefits determination was not an abuse of discretion, the Court does not address MetLife's contractual argument that it is not liable based on the terms of the Services and Financial Agreement ("ASO").

21